UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

CASE NO: 8:18-CR-215-T-33-CTT

VS.

VLADIMIR RODRIGUEZ
_____/

## SENTENCING MEMORANDUM

COME NOW, the Defendant, VLADIMIR RODRIGUEZ, by and through his undersigned counsel, hereby files this his Sentencing Memorandum.

### Factual Background and Procedural History

Mr. Vladimir Rodriguez was charged by Indictment and pled guilty to Count One to the offense of Conspiracy to Possess With Intent to Distribute Five Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§70503 (a); 70506 (a) and (b) and Title 21 U.S.C.S. 960(b)(1)(B)ii. Factually, Mr. Rodriguez is a 38 year-old Hispanic male born in Tumaco, Colombia. He was born into a very poor family. He grew up working in the fields and had little food and clothing. Because he had to work to survive he only received a fourth grade education. The house he grew up in did not even have running water. Not much has changed. Mr. Rodriguez financially is still incredibly poor. For the past 10 years he earns

approximately $5 a day before expenses as a motorcycle taxi driver. He resides in a wooden home with his wife of 20 years, Marlene Joana Cevillano Lara and their two children, Diego and Deiber. The home he resides in similarly lacks running water.

His wife is disabled. She is deaf as a result of a botched surgery. Vladimir Rodriguez intended to use the promised $5,000.00 to pay for the surgery to correct her hearing.

While it is never a justification or excuse to break the law, it is nevertheless understandable how Mr. Rodriguez would agree to this drug deal upon the "promise" of a mere $5000.00 upon his successful return. He has not even received a penny for his endeavor.

Based upon the total amount of drugs involved the United States Probation Officer calculated Mr. Rodriguez's base offense level to be 36 (PSR 7 ¶ 20). With a 2 level safety valve reduction pursuant to U.S.S.G. 2D1.1(b)(17) (PSR 7 ¶ 21), a 2 level reduction for acceptance of responsibility pursuant to U.S.S.G. 3E1.1 (a) (PSR 7 ¶ 27) and a one (1) level reduction for timely notification of intent to plead guilty pursuant to U.S.S.G. 3E1.1 (PSR 7 ¶ 28) they calculated his total offense level to be 31. PSR 7 ¶ 29 and PSR 10 ¶ 59. This calls for a recommended guideline sentence of 108 to 135 months imprisonment. However,

because of the minimum mandatory probation calculated his guideline range to be 120 to 135 months (PSR 10 ¶59).

### Request for a mitigating role adjustment pursuant to U.S.S.G. §3B1.2

In the PSR, the United States Probation Officer fails to identify any factors warranting a departure from the guidelines. Mr. Rodriguez, however, submits that he is eligible mitigating role adjustment, pursuant to U.S.S.G. § 3B1.2, which provides:

> Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

We believe he qualifies as minor participant, i.e., characteristic of a defendant "who is less culpable than most other participants in the criminal activity." § 3B.1.2 cmt. App. N. 5. It is respectfully pointed out that his eligibility for a mitigating role adjustment has been clarified by recent actions of the U.S. Sentencing Commission, in amending § 3B1.2.

Before 2002, when Amendment 640 was issued, amending U.S.S.G. § 3B1.2., the Sentencing Commission has been concerned that "the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain

offenders… [The] base offense levels derived from the Drug Quality Table in § 2D1.1 overstate the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under § 3B1.2." U.S.S.G. Amendment 640. For this reason, the Commission modified the Drug Quantity Table in §2D1.1 "to provide a maximum base offense level of level 30 if the defendant receives an adjustment under § 3B1.2," commenting:

> The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers" whose most serious trafficking function is transporting drugs and who quality for a mitigating role adjustment).U.S.S.G. Amendment 640.
>
> Therefore if…."(A) the defendant received an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels. If the resulting offense level is greater than level 32 and the defendant receives the 4-level ("minimal participant") reduction in §3B1.2(a), decrease to level 32." 2D1.1(a)(5).

**<u>Distinguishing co-defendants' roles</u>**

The two Ecuadorians, Jose Alejandro Veliz Suarez and Carlos Hipolito Escalente Merizalde were in charge of this smuggling operation. They were the only ones who drove the go-fast vessel. They were in charge of the navigation they were the only ones who used the

phone, GPS or the satellite radio. It was Suarez who told Vladimir Rodriguez to say they were kidnapped and forced to do this drug trip. In fact, the two blamed Vladimir Rodriguez for not alerting them of the Coast Guard helicopter because he was constantly throwing up due to seasickness.

Mr. Vladimir Rodriguez was not a boat captain. In fact, he had no prior mariner experience. He knows nothing about navigation or how to read a GPS. He was nothing more than a very cheap drug mule who because of his inexperience did not even receive a penny (or peso) for this drug trip. Rather, he was "promised" $5,000.00 upon his return. I am confident both Mr. Suarez and Mr. Merizalde as captain and navigator were promised and received a significant larger paycheck.

**Current state of §3B1.2, amended on November 1, 2015**

Since issuing Amendment 640 in 2002, the Commission has continued to be concerned about the improper under-application of the mitigating role adjustment. Recently, in a wide-ranging study of low-level offenders, the Commission concluded that the adjustment continues to be applied "inconsistently and *more sparingly than the Commission intended.*" U.S.S.G. Amendment 794 (emphasis supplied). Largely to encourage application of the

adjustment to greater numbers of low-level offenders, the Commission issued Amendment 794, effective November 1, 2015.

The most important change to the guideline under Amendment 794 was the addition of "a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the extent of the adjustment." U.S.S.G. Amendment 794. All five of the listed factors have implications for Mr. Rodriguez:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 App. N.3 (C).

**Factors (i)-(iv): understanding, planning, authority, discretion**

The criteria in factors (i) through (iv) focus on the defendant's understanding, planning/organizing function, decision-making authority,

responsibility and discretion. Mr. Rodriguez exercised none of these attributes. Mr. Rodriguez had no clue as to the scope or structure of the criminal activity. He had no idea were they were going, who he was to meet or even how to get there. He was not involved in acquiring drugs, arranging for their distribution, or scheduling the times and places for their movement. With respect to decision-making authority, responsibility, and discretion, these were simply not part of the job. He was taking orders from the others. He never drove the go-fast or operated the GPS. He never touched the phone or handled the radio. He just did what Mr. Suarez and Mr. Merizalde told him to do. In short, Mr. Rodriguez's role was "perform[ing] a limited function in the criminal activity." U.S.S.G. §3B1.2 App.N. 3(A). As the Application Note states, "[A] defendant who is convicted of a drug trafficking offense whose participation in that offense was limited to transporting or storing drugs…*may receive an adjustment under this guideline.*" *Id.* (emphasis supplied).

### Factor (v): "benefit" from the crime

Similarly, indicative of Mr. Rodriguez's minor role is factor (v) of Application Note 3 (C): "the degree to which the defendant stood to benefit from the criminal activity." In exchange for this one and only trip, Mr. Rodriguez was "promised" a total of $5,000.00. A paltry sum compared to the others. I suspect it was a mere percentage of what Mr. Merizalde and Mr. Suarez were promised and

received. The promise of $5,000.00 is an amount wholly unrelated to the value of the drugs involved. This amount clearly demonstrates his minor role. Said miniscule, non-proprietary "benefit" of this type clearly meets the guideline's requirement for a mitigating role adjustment. As the guideline states, "A defendant who is simply being paid to perform certain tasks *should be considered* for an adjustment under this guideline." U.S.S.G. § 3B1.2 App. N. 3 (C) (emphasis supplied).

### Conduct "integral" or "indispensable" to the offense

As noted by the Commission in issuing Amendment 794, defendants historically have been improperly denied mitigating role adjustments because their conduct was "integral" (essential, indispensable) to offense. In the Eleventh Circuit, *United States v. Rodriquez De Varon,* 175 F. 3d 930 (11th Cir. 1999) was long cited for this point. In Amendment 794, however, the Commission abrogated *De Varon* and clarified beyond all doubt that the fact that a defendant's role was essential to the offense "does not alter the requirement… that the court must access the defendant's culpability relative to the average participant in the offense." U.S.S.G. Amendment 794. "The fact that a defendant performs an essential or indispensable role in the criminal activity *is not determinative.* Such a defendant *may receive an adjustment under this guideline*

if he or she is substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 App. N. 3 (C) (emphasis supplied).

### Drug quantity as a basis for denial of adjustment

In the past, defendants serving as drug couriers were commonly denied mitigating role adjustments based on the amount of drugs being transported. In *De Varon*, the Eleventh Circuit held that drug quantity "is a material consideration in assessing a defendant's role" in a drug courier case, noting that the guidelines "explicitly recognize that amount of drugs may be determinative in the context of minimal participants." 175 F. 3d at 943. This analysis, however, was invalidated by Amendment 794, which states that a transporter of drugs- although accountable for the drugs he transported under relevant conduct- "*may receive*" a mitigating role adjustment. U.S.S.G. Amendment 794 (emphasis supplied). It is further instructive that in the list of factors courts are now directed consider, <u>not one of the five factors refers to drug quantity.</u> U.S.S.G. § 3B1.2 App. N. 3 (C). Under the current guidelines, Mr. Rodriguez may not be denied a mitigating role adjustment on the grounds of drug quantity.

### Culpability compared to the "average participant"

The fundamental requirement for the minor role adjustment is that, "based on the totality of the circumstances," the defendant's role in the offense "makes him substantially less culpable than the average participant in the criminal

activity." U.S.S.G. § 3B1.2 App. N. 3 (A). According to the Sentencing Commission's Historical Notes to the 2015 Amendments, "average participant" refers narrowly to the defendant's "co-participants in the case at hand." It is clear that, compared with all other known participants; Mr. Rodriguez was "substantially less culpable" than all other participants. He was not directly connected with the larger drug organization; he had no authority or knowledge of anything. He was simply hired to assist the co-defendants. Whether compared with all the participants in the larger drug conspiracy or only with his co-defendants, qualifies for the 2-level minor role adjustment.

In view of Mr. Rodriguez's minor and subordinate role in the conspiracy, and the intent and effect of the Sentencing Commission in issuing Amendments 640 and 794, it is respectfully submitted he is entitled to a 2-level minor role reduction. Accordingly, he should be assessed a total offense level of 26 criminal history category I. This provides for a guideline range of 63 to 78 months.

## 18 U.S.C. §3553(f) Limitations on Applicability of the Ten Year Statutory Minimum

Mr. Rodriguez respectfully disagrees with the Eleventh Circuit's precedent regarding § 3553 (f) and it appears there is a circuit split, as the D.C. Circuit recently held that §3553(f) applies in Maritime Drug Law Enforcement Act

*United States vs. Mosquera-Murillo*, _F.3d_2018, 2018 WL 4050250, (D.C. Cir. Aug. 24, 2018).

The safety valve statute is meant to apply to "an offense under" five listed statutes, including 21 U.S.C. § 960. *See* 18 U.S.C. § 3553(f). The D.C. Circuit concluded that a defendant convicted under the MDLEA is also convicted of an offense under 21 U.S.C. § 960. The D.C. Circuit explained:

> In particular, the MDLEA supplies elements that make the defendants' conduct unlawful: (i) conspiring, (ii) to intentionally or knowingly, (iii) distribute or possess with intent to distribute, (iv) a controlled substance, (v) while on board a vessel. 46 U.S.C. §§ 70503(a)(1), 70506(b), Meanwhile, § 960 supplies the offense elements of drug-type and drug-quantity-5 or more kilograms of cocaine, and 100 or more kilograms of marijuana-which bear on the degree of culpability and determine the statutory sentencing range. 21 U.S.C. §960(b)(1)(B), (b)(2)(G). In that light, the defendants' crime is "an offense under" both the MDLEA and § 960, drawing offense elements from each.

The D.C. Circuit further observed that its statutory interpretation is consistent with Supreme Court precedent holding that the drug type and quantity are elements of the offense. It is noted that the defendants' indictments, plea agreements, and judgments all reflected that the defendants were convicted under both the MDLEA and § 960. Accordingly, the D.C. Circuit concluded (in express disagreements with the Eleventh Circuit) that § 3553 (f) applies to MDLEA convictions.

Mr. Vladimir Rodriguez was similarly convicted of "an offense under" § 960; this conclusion follows the statutory text and history and the record in Mr. Vladimir Rodriguez's case. The Indictment charged, and Mr. Vladimir Rodriguez's guilty plea was based upon an offense under the MDLEA and 21 U.S.C. § 960. Therefore, we believe Mr. Vladimir Rodriguez is eligible for a sentence below the mandatory minimum because he was convicted of an offense under § 960 and he has satisfied each of the criteria in § 3553(f).

## Application of 18 U.S.C. § 3553(a)

Mr. Rodriguez regrets his commission of a serious federal crime and understands the need for punishment. He submits, however, that the nature and circumstances of his offense, his personal history and characteristics, weigh in favor of a sentence significantly less than suggested by the Department of Probation.

**The Purposes of Sentencing**

Section 3553(a)(2) sets forth the purposes of sentencing, which can be summarized as:

    (1) just punishment;

    (2) deterrence;

    (3) protection of the public; and

(4) rehabilitation.

**Just Punishment**

Mr. Rodriguez's conduct, in a conspiracy to distribute illegal drugs, was a violation of law and must be justly punished in a way that constitutes appropriate retribution and promotes respect for the law a sixty-three month guideline sentence will demonstrate to him and to other offenders, and to the public that such conduct is reprehensible and heavily punished under the law.

**Deterrence**

As for specific deterrence: Mr. Sanchez Reyes is not among those offenders—if indeed, such exist—for whom crime is an acceptable way of life and for whom reoffending is inevitable. His one time involvement in crime was related directly to his poverty. Sixty-three months of incarceration with the inability to support his family is more than adequate for this purpose. As for general deterrence: By any standard, 63 months in federal prison is severe enough to dissuade others from committing similar crimes.

**Protection of the Public**

Other than this one bad decision Mr. Rodriguez has never been, and is not now, a threat to the safety or wellbeing of the public. This consideration requires no additional period of incarceration.

**Rehabilitation**

Being away from his family and learning a trade while incarcerated will enable Mr. Rodriguez to have a crime free life. Such treatment can be completed with said sentence.

**The Kinds of Sentences Available (and related costs)**

Since in this case only incarceration is available, the cost of this punishment is a relevant consideration. At the rate of $34,770 per year (PSR 11 ¶ 68), any incarceration beyond that which is necessary represents an unjustified expenditure of public funds. Mr. Rodriguez submits that a sentence of sixty-three (63) months is sufficient to accomplish the goals of sentencing at a justifiable cost.

## CONCLUSION

For the reasons stated herein, Mr. Rodriquez respectfully asks this Court to impose a guideline sentence of sixty-three (63) months. Such a sentence is reasonable in light of the advisory guideline range and the factors set forth at 18 U.S.C. § 3553(a).

DATED this 29th day of October, 2018.

Respectfully submitted,

/s/William E. Gottfried

William E. Gottfried, Esquire
FBN 0477974
Attorney for Vladimir Rodriguez

## Certificate of Service

I hereby certify that on 29th October, 2018 I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system was forwarded to all parties of record and to Office of the U.S. Attorney, Middle District of Florida, Tampa Division.

/s/William E. Gottfried
William E. Gottfried, Esquire
FBN 0477974
Attorney for VLADIMIR RODRIGUEZ
1435 Gulf to Bay Blvd., Suite C
Clearwater, Florida 33755
Telephone: (727) 462-5592
FAX No:   (727) 462-5593
Email: wgfirm@aol.com